UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BOARD OF TRUSTEES, LABORERS HEALTH AND WELFARE FUND FOR NORTHERN CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>GARRISON DEMOLITION AND ENGINEERING, INC.,<br><br>Defendant. | Case No.  25-cv-02878-TLT   (LJC)<br><br>**ORDER TO SHOW CAUSE WHY MOTION FOR DEFAULT JUDGMENT SHOULD NOT BE DENIED IN PART**<br><br>Re: Dkt. No. 22 |

## I. INTRODUCTION

Plaintiffs, the Board of Trustees of four union fringe benefit funds, bring this action under the Employee Retirement Income Security Act of 1974 (ERISA) to collect delinquent contributions owed by Defendant Garrison Demolition and Engineering, Inc. (Garrison). The presiding district judge, the Honorable Trina Thompson, has referred Plaintiffs' pending Motion for Default Judgment (ECF No. 2) to the undersigned magistrate judge for a report and recommendation. ECF No. 24. Garrison has failed to file an answer, request that the default be set aside, or otherwise respond to or participate in this lawsuit. The undersigned held a hearing on September 2, 2025. For the reasons discussed below, Plaintiffs are ORDERED TO SHOW CAUSE why the Motion should not be denied in part.

Plaintiffs shall file a response no later than September 23, 2025. After reviewing Plaintiffs' response, the undersigned will prepare a report and recommendation on the Motion for review by Judge Thompson.

/ /

/ /

## II. BACKGROUND

### A. Allegations of the Complaint

Because courts take the factual allegations of a plaintiff's complaint as true for the purpose of default judgment (except as to damages), this Report summarizes the allegations of Plaintiffs' Complaint as if true.

Plaintiffs are the trustees of Laborers Health and Welfare Trust Fund for Northern California, the Laborers Vacation-Holiday Trust Fund for Northern California, the Laborers Pension Trust Fund for Northern California, and the Laborers Training and Retraining Trust Fund for Northern California, and they bring this action on behalf of those funds. Compl. (ECF No. 1) ¶ 2. The trust funds are multi-employer employee benefit plans as defined by ERISA. *Id.* Garrison is an employer as defined by ERISA. *Id.* ¶ 3.

At all relevant times, Garrison was a signatory to a collective bargaining agreement (CBA) with the Northern California District Council of Laborers. *Id.* ¶ 4. Specifically, Garrison signed a Memorandum Agreement (*id.* Ex. B) incorporating by reference the Laborers Master Agreement (*id.* Ex. A), which in turn incorporates the Trust Agreements (*id.* Ex. D) for each benefit fund at issue. *Id.* ¶ 4.[1] "By said Agreements, [Garrison] promised that it would contribute and pay to Plaintiffs the hourly amounts required by the Agreements for each hour paid for or worked by any of its employees who performed any work covered by said Agreements." *Id.*

According to Plaintiffs, Garrison failed to comply with payment and reporting requirements under its agreements, and "has accrued delinquencies in fringe benefit contributions of at least $47,178.36; at least $7,199.02 in liquidated damages and interest on contributions reported but not paid; and at least $825.66 in liquidated damages and interest on contributions paid but paid late." *Id.* ¶¶ 9, 11; *see also id.* Ex. F (calculation worksheets).

Before filing this action in March of 2025, Plaintiffs sent a demand letter to Garrison on January 2, 2025 asserting Garrison's delinquency. *Id.* ¶ 10 & Ex. E (ECF No. 1 at 201). That

---

[1] Plaintiff also allege that Garrison signed a "Letter regarding [the] Master Agreement." Compl. ¶ 4 & Ex. C. That letter revoked the authority of United Contractors (UCON) to represent Garrison in negotiations. *Id.* Ex. C (ECF No. 1 at 79). Plaintiffs have not explained what relevance, if any, that letter has to the present Motion.

2

letter stated a somewhat lower value of liquidated damages and a very slightly lower value of delinquent contributions. *Id.* Plaintiffs had previously sent a series of letters on June 25, September 30, and December 13, 2024, identifying delinquent reports or contributions. *Id.* Ex. E (ECF No. 1 at 203–06).

Plaintiffs' Complaint seeks delinquent fringe benefit contributions, actual damages, interest, liquidated damages, attorneys' fees, costs of suit, and injunctive relief requiring timely submission of contribution reports and contributions going forward. *Id.* at 5–6 (Prayer for Relief).

### B. Motion and Supporting Evidence

Plaintiffs move for default judgment, arguing that they are entitled to relief under the standard of *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986), based on Garrison's failure to appear and defend this action. *See generally* ECF No. 22. Plaintiffs seek "$47,178.36 in fringe benefit contributions of [sic]; $10,029.70 in liquidated damages and interest on contributions reported but not paid; and $825.66 in liquidated damages and interest on contributions paid but paid late. ECF No. 22-3 (Proposed Order) at 3. Plaintiffs also seek attorneys' fees totaling $8,226.50, costs totaling $1,559.04, and an injunction requiring Garrison "to timely submit all required monthly contribution reports and contributions due and owing." *Id.*

Plaintiffs rely on a declaration by Michelle Lauziere, the Director of Employer Services for the Laborers Funds Administrative Office of Northern California, Inc., to explain the agreements at issue and the damages Plaintiffs seek. ECF No. 22-1. Plaintiffs' counsel Norey Navarro offers a declaration to support Plaintiffs' requests for attorneys' fees and costs. ECF No. 22-2.

### III. LEGAL STANDARD

A court may enter default judgment on a motion by a plaintiff after the clerk has a entered a defendant's default. Fed. R. Civ. P. 55(b)(2). After considering threshold issues of jurisdiction and service of process, courts consider the following factors in exercising their discretion to grant or deny default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to

3

excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Courts evaluating a motion for default judgment take the factual allegations of a plaintiff's complaint as true except as to damages, which must be shown by evidence. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).

## IV.  ANALYSIS

### A.  Jurisdiction

#### 1.  Subject Matter Jurisdiction

Federal courts have subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Plaintiffs here seek relief solely under federal law, specifically ERISA. Compl. ¶¶ 8–18; *see* ECF No. 22 (Mot.) at 15–16. The Court therefore has subject matter jurisdiction under 28 U.S.C. § 1331, as well as under ERISA's specific grant of exclusive federal jurisdiction, 29 U.S.C. § 1132(e)(1).

#### 2.  Personal Jurisdiction

"Personal jurisdiction over a defendant may be acquired in one of two ways: by personal service of that defendant [in the jurisdiction] or by means of a defendant's 'minimum contacts' with the jurisdiction." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). Where a federal statute provides for nationwide service of process, the "minimum contacts" test for personal jurisdiction looks to the defendant's contacts with the United States as a whole. *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). "The ERISA statute so provides," and therefore requires only sufficient contact between defendants and the United States. *Cripps*, 980 F.2d at 1267 (citing 29 U.S.C. § 1132(e)); *see, e.g.*, *Reg'l Loc. Union Nos. 846 & 847 v. Jayco Steel Servs., Inc.*, No. 3:13-cv-02267-ST, 2015 WL 2123757, at *4 (D. Or. Apr. 29, 2015); *Vivien v. Worldcom, Inc.*, No. C 02-01329 WHA, 2002 WL 31640557, at *2 (N.D. Cal. July 26, 2002).

Garrison is a California corporation. Compl. ¶ 3. "Courts can exercise general personal jurisdiction over a corporation in its state of incorporation." *Green Pet Shop Enters., LLC v. Grand Innovations USA, LLC*, No. 2:21-cv-06156-MCS-MAA, 2022 WL 2235474, at *1 (C.D.

4

Cal. Apr. 13, 2022) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). Garrison therefore has sufficient ties with the United States to fall within this Court's personal jurisdiction, and would have sufficient contacts with California to establish personal jurisdiction even if ERISA did not call for a nationwide test.

**B.     Service of Process**

As another threshold issue, the Court must determine that service of process was proper. *Bank of the W. v. RMA Lumber Inc.*, No. C 07-06469 JSW, 2008 WL 2474650, at *2 (N.D. Cal. June 17, 2008). Service must comply with Rule 4 of the Federal Rules of Civil Procedure, which authorizes service either through several means specifically listed or in any manner allowed by state law. *See* Fed. R. Civ. P. 4(e)(1), (h)(1)(A)

Plaintiffs assert that service was properly completed in this case because "the Summons was returned executed confirming that the person served on behalf of Defendant was 'Kris Huff - President [*sic*]', Defendant's Agent for Service of Process, at 438 Santander Drive, San Ramon, CA 94583." ECF No. 22 at 12 (brackets in original[2]); *see* ECF No. 10. Plaintiffs do not cite a particular provision of Rule 4 or California state law as authorizing service in the manner they completed it. Nor do they cite evidence associating Garrison with the Santander Drive address where Huff was served. At least some evidence in the record instead reflects an address of 2603 Camino Ramon, Suite 200, in San Ramon. *E.g.*, ECF No. 22-1 at 8.

Service nevertheless appears to have been proper. Rule 4 permits a corporation to be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1)(B). Kris Huff signed the Memorandum Agreement as President of Garrison. ECF No. 22 at 90.[3] The Court is satisfied that Huff is "an officer" of Garrison, such that Plaintiffs validly effected service under Rule 4(h)(1)(B), regardless

---

[2] It is not clear to the Court what portion of Huff's name or title Plaintiffs suggest is listed in error.
[3] He is also listed as a "qualifying individual" who "owns 10 percent or more of the voting stock/membership interest of [the] company" on a record that Plaintiffs have provided of Garrison's expired California contractor's license. ECF No. 22-1 at 9.

5

of whether the address where Huff was served was associated with Garrison.

## C. *Eitel* Factors

Most of the *Eitel* factors either weigh in favor of default judgment or are inapplicable where, as here, a defendant has failed to appear. With no other avenue apparent to resolve this case, Plaintiffs will be prejudiced if default judgment is not granted because they will be left without a remedy. There is no indication that Garrison's default was due to excusable neglect—Plaintiffs properly served Garison as discussed above, and also mailed Garrison a copy of the entry of its default, *see* ECF No. 15—nor is there any indication Garrison would dispute any material facts. Notwithstanding the strong public policy favoring decisions on the merits, such a decision is not possible when Defendants have failed to appear or defend and there is no indication that they intend to do so.

The sum of money at stake is not so high as to weigh against granting default judgment to the extent supported by evidence, an issue discussed separately below. "The remaining factors, 'the merits of plaintiff's substantive claim' and 'the sufficiency of the complaint,' are intertwined where, as here, the case has not advanced beyond the pleading stage." *Dist. Council 16 N. Cal. Health & Welfare Tr. Fund v. Prod. Serv. & Lab., Inc.*, No. 20-cv-2063-JCS, 2022 WL 17371170, at *7 (N.D. Cal. Sept. 13, 2022), *recommendation adopted*, 2022 WL 17371142 (N.D. Cal. Oct. 25, 2022).

ERISA requires employers who are "obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement" to "make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. When an employer fails to do so, a fiduciary may bring an action to enforce those obligations. If the fiduciary prevails, "the court shall award the plan":

(A) the unpaid contributions,

(B) interest on the unpaid contributions [as provided by the plan],

(C) an amount equal to the greater of--

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an

> amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

Plaintiffs have sufficiently alleged that Defendants breached their obligation to pay (or to pay timely) contributions owed under the terms of the multiemployer plans at issue. Compl. ¶ 11 & Ex. F. The Court therefore concludes that Plaintiffs have pleaded a meritorious claim.

### D. Damages

As noted above, while a plaintiff may rely on the allegations of its complaint to establish the merits of its claim for default judgment, the plaintiff must prove its damages with evidence. *TeleVideo Sys.*, 826 F.2d at 917–18. Plaintiffs' requested damages in this case fall in two broad categories: (1) unpaid contributions, interest, and liquidated damages; and (2) attorneys' fees and costs of collection efforts.

#### 1. Contributions, Interest, and Liquidated Damages

To support their request for damages (other than attorneys' fees), Plaintiffs rely on the declaration of Michelle Lauziere, Director of Employer Services for the Laborers Funds Administrative Office of Northern California, Inc. ECF No. 22-1. Lauziere describes Plaintiffs' entitlement to damages for unpaid contributions as follows:

> 15. Under my direction and pursuant to the Agreements, the Administrative Office examined Defendant's reports and employee check stubs to determine whether all required contributions were paid by Defendant for the months of March to June 2024. Based upon such reports submitted to the Trust Funds and, in one instance, based upon unreported hours revealed by a review of a covered employee's check stubs, the Administrative Office discovered that there were delinquent contributions owed to all Trust Funds, specifically at least $47,178.36; at least $7,199.02 in liquidated damages and interest on contributions reported but not paid; and at least $825.66 in liquidated damages and interest on contributions paid but paid late. *See* Ex. F in Dkt. No. 1. In determining whether all required contributions were paid by Defendant, the Administrative Office relied on Garrison's own books and records to determine the amounts due and owing to the Trust Funds. The examination of Garrison's own books and records was conducted in a thorough, fair, and careful manner.

7

> 16. To date, Garrison owes the Trust Funds at least $47,178.36 in fringe benefit contributions; at least $10,029.70 in liquidated damages and interest on contributions reported but not paid; and at least $825.66 in liquidated damages and interest on contributions paid but paid late. These figures are calculated through July 2, 2025. Interest is calculated at the rate of 1.5% per month as allowed by the Master Agreement. Exhibit B annexed herein includes a true and correct copy of the report prepared by Plaintiffs detailing all liquidated damages and interest due from Garrison as a result of not making the required fringe benefit contributions to the Trust Funds or making such fringe benefit contributions late to the Trust Funds.

ECF No. 22-1, ¶¶ 15–16.

Exhibit F to the Complaint, which Lauziere cites, is described in the Complaint as "applicable Statements of Contributions and Statements of Interest and Liquidated Damages *from the Trust Funds*." Compl. ¶ 11 (emphasis adds). In other words, and as Plaintiff's counsel confirmed at the hearing, they are Plaintiffs' own summaries of the money they claim they are owed. Exhibit B to Lauziere's declaration consists of updated versions of the same charts reflecting a higher value of interest owed. ECF No. 22-1 at 11–13. Permitting Plaintiffs to rely on their own say-so of what Garrison owes would undermine the requirement to prove damages through evidence—particularly where underlying evidence that has not been provided is apparently available. Lauziere states that her office relied on "reports submitted to the Trust Funds" and "a covered employee's check stubs." ECF No 22-1, ¶ 15. No such evidence is included in the current record.

Plaintiffs cite two Ninth Circuit decisions for the proposition that "[d]eterminations of the contributions due to trust funds under the collective bargaining agreement requiring payments will be construed in favor of the funds." ECF No. 22 at 17. The first of those cases held that a notice of termination was not valid when it was not served on the union within the time allowed by a CBA. *Irwin v. Carpenters Health & Welfare Tr. Fund for Cal.*, 745 F.2d 553, 555–57 (9th Cir. 1984). The other case held that where an employer "violated its statutory duty under ERISA to keep accurate records and failed otherwise to come forward with any evidence of the extent of covered work performed by the 35 [masons at issue], the Trust Funds are entitled as a matter of law to recover contributions for all hours worked by these 35 masons during the quarter in which they were shown to have performed some covered work." *Brick Masons Pension Tr. v. Indus.*

8

*Fence & Supply, Inc.*, 839 F.2d 1333, 1339 (9th Cir. 1988). Neither suggests that a court should excuse trust funds from offering underlying evidence to support their requests for damages when moving for default judgment.

As discussed above, ERISA authorizes recovery of interest on unpaid contributions at the rate stated in the plan. 29 U.S.C. § 1132(g)(2)(B). ERISA authorizes liquidated damages equal to the greater of: (i) an amount equal to interest; or (ii) an amount provided in the plan up to twenty percent of unpaid contributions "or such higher percentage as may be permitted under Federal or State law." 29 U.S.C. § 1132(g)(C). Lauziere's declaration explains that the Master Agreement at issue provides for simple interest at 1.5% per month and liquidated damages at $150 per month. ECF No. 22-1, ¶ 12; *see* ECF No. 1 at 41 (Master Agreement § 28A). Plaintiffs explain in their Motion that they are not availing themselves of their right to potential greater amounts of liquidated damages under § 1132(g). ECF No. 22 at 18. As discussed above, however, Plaintiffs have not offered the underlying evidence to support the delinquent contributions on which their interest and liquidated damages are based. Nor have Plaintiffs explained, or offered evidence to support, how they calculated the interest and liquidated damages at issue—i.e., when delinquent payments were due, when late payments were made, and the date through which Plaintiffs seek interest and/or liquidated damages for payments that were never made.

Plaintiffs are therefore ORDERED TO SHOW CAUSE why their requests for damages based on unpaid contributions, interest, and liquidated damages should not be denied. Plaintiffs must either provide the evidence on which they relied or explain why they believe such a showing is not necessary. Plaintiffs also must explain how they calculated interest and liquidated damages based on each late-paid or unpaid contribution.

### 2. Attorneys' Fees and Costs

ERISA authorizes recovery of "reasonable attorney's fees and costs of the action" when a fiduciary successfully sues an employer. 29 U.S.C. § 1132(g)(2)(D).

Plaintiffs assert in their Motion that they are further entitled by contract to "reasonable attorney's fees, costs, and all other expenses incurred in enforcing collection," citing "Ex. A, Art. II, § 10 and Art. IV, § 3." ECF No. 22 at 19. Exhibit A to both the Motion and the Complaint is

9

the Master Agreement, which is not divided into articles, so that citation appears to be erroneous. But whether Plaintiffs might be entitled by contract to other "collection" costs besides the "cost of the action" under § 1132(g)(2)(D) is not material to the present Motion, because all of the costs they seek are related to this action. ECF No. 22-2 at 11. The undersigned intends to recommend granting Plaintiffs' request for $1,559.04 in costs, consisting of Westlaw research, document reproduction, this Court's filing fee, an overnight delivery charge,[4] and service of process (which required three attempts). *See id.*

Plaintiffs seek $8,226.50 in attorneys' fees for a total of 28 hours of work, of which the vast majority (22.1 hours) was conducted by associate attorney Norey Navarro at a rate of $300 per hour. ECF No. 22-2, ¶¶ 10, 13. Navarro graduated from law school in 2008 and is currently based in Los Angeles. *See id.* ¶¶ 1, 13. Two shareholder attorneys at Plaintiffs' firm with extensive experience in ERISA and union law, Kristina Hillman and Sean McDonald, each worked for less than two hours on the case at a rate of $350 per hour. *Id.* ¶¶ 10–13. Senior paralegal Aaran Nathan worked for 2.7 hours on the case at $150 per hour. The Court finds all of those billing rates to be reasonable in light of these professionals' experience and local market rates. *See, e.g.*, *Villasenor v. Cmty. Child Care Council of Santa Clara Cty., Inc.*, No. 18-cv-06628-BLF, 2021 WL 242924, at *8 (N.D. Cal. Jan. 25, 2021) (awarding fees at rates of $650 per hour for law firm partners and $190 per hour for senior paralegals in an ERISA case).

Having reviewed Plaintiffs' counsel's detailed billing records, the Court finds most of counsel's fees to have been incurred for reasonable amounts of work reasonably connected to the prosecution of this case. *See* ECF No. 22-2 at 8–9. There are two exceptions.

First, Navarro provided the following 2.9-hour billing entry for February 10, 2025:

> Review complaint filed by HE Equipment Services; review cross-complaint filed by SureTec; legal research re bond requirements for licensed contractors, CA Bus & Prof Code Section 7071, and Senate Bill 607 as relates to matter; review CA Secretary of State website and Contractors State License Board website as relates to Garrison

---

[4] Civil Local Rule 5-1(d)(7) does not call for submission of chambers copies unless required by a judge's standing order or request by a judge. This case was originally assigned to the Honorable Sallie Kim, whose Standing Order requires chambers copies of substantially all filings. The Court therefore finds that this delivery charge was reasonably incurred.

10

> Demolition & Engineering; confer with Roberta Perkins re my research; draft and send recommendation to Kristina Hillman for review

*Id.* at 8. Plaintiffs have provided no explanation for the relevance of HE Equipment Services, SureTec, any litigation involving those entities, bond requirements for contractors, the Business and Professional Code, or Senate Bill 607 to this case. To the extent some of the research related to Garrison might have been relevant, it is block-billed in a manner that does not allow the Court to segregate fees for such research from other matters that are not obviously connected to this litigation.

Second, senior paralegal Aaron Nathan billed a total of 2.7 hours from February 25, 2025 through March 13, 2025 to draft and revise a complaint. *Id.* The Court has no objection to a paralegal helping to draft a complaint, and such time would normally be recoverable. Here, though, Navarro provided a time entry on March 17, 2025—after Nathan completed his work on the case—that includes the phrase "start draft of complaint." *Id.* Taking Navarro at her word, if she started a draft on that date, it does not appear that she used Nathan's draft. The Court is not inclined to recommend allowing recovery for time preparing a draft that went unused.

Plaintiffs are therefore ORDERED TO SHOW CAUSE why their Motion should not be denied as to the $1,279 billed for 2.9 hours of Navarro's time and 2.7 hours of Nathan's time on the matters address above.

### E.   Injunctive Relief and Continuing Jurisdiction

In the conclusion section of their Motion, Plaintiffs ask the Court to "[o]rder[] and permanently enjoin[] Defendant to timely submit all required monthly contribution reports and contributions due and owed by Defendant to the Trust Funds."[5] ECF No. 22 at 20. The Motion does not otherwise address such relief or explain why it is warranted under the legal standard for granting permanent injunctive relief. *See, e.g.*, *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). An ongoing requirement to submit contribution reports might well be warranted, but

---

[5] The requirement to "timely submit" contribution reports suggests that this request is intended to require compliance going forward, rather than audit of already-delinquent contribution reports, but it is possible that the Court has misunderstood Plaintiffs' intent.

1  Plaintiffs' burden of persuasion on this Motion calls for at least some explanation of the request.
2  Plaintiffs should also address how enjoining Garrison to make future payments would be
3  consistent with the requirement "that remedies available at law, such as monetary damages, are
4  inadequate to compensate for [an] injury" to be addressed through injunctive relief.  *See id.*
5  Plaintiffs are ORDERED TO SHOW CAUSE why those requests should not be denied.

In a section entitled "Continuing Jurisdiction," Plaintiffs assert that they "seek to conduct an audit of Defendant's records to discover if there are additional amounts due and owing," and that Garrison "expressly agreed to have its books and records examined to ensure compliance with the Agreements." ECF No. 22 at 19.  "Courts in this district have routinely required employers to comply with audits for benefit plans under similar circumstances."  *Dist. Council 16 N. California Health & Welfare Tr. Fund v. Masterpiece Painting, Inc.*, No. 22-cv-06540-HSG (LJC), 2024 WL 1511330, at *12 (N.D. Cal. Mar. 9, 2024), *recommendation adopted*, 2024 WL 1511973 (N.D. Cal. Mar. 29, 2024).  Here, though, Plaintiffs do not include an injunction requiring an audit either in the request for relief in their Motion, ECF No. 22 at 20, or in their proposed order, ECF No. 22-3.  Nor have Plaintiffs explained what, specifically, the Court might order Garrison to provide as part of such an audit.  *Cf. Masterpiece Painting*, 2024 WL 1511330, at *13 (listing specific documents to be provided as part of the required audit).  Plaintiffs also have not addressed whether they can seek such injunctive relief to require cooperation with an audit when such relief was not specifically included in their Complaint.  *See* Compl. at 5–6 (Third Claim for Relief (Injunctive Relief) and Prayer for Relief).

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).[6]  "The Ninth Circuit has also held that a default judgment that goes 'beyond the scope of the complaint' is a 'nullity.'" (*JLG Enters., Inc. v. Excalibur Sires,*

---

[6] District courts have held in ERISA cases that Rule 54(c) does not prevent collection of contributions (and interest and liquidated damages) that come due after a complaint is filed, so long as the complaint put the defendant on notice of such ongoing accruals.  *See, e.g.*, *Operating Eng'rs Health & Welfare Tr. Fund v. Mercoza*, No. 24-cv-03007-LB, 2025 WL 1570171, at *4 (N.D. Cal. May 7, 2025), *recommendation adopted*, 2025 WL 1569592 (N.D. Cal. June 3, 2025); *Alameda Cty. Elec. Indus. Serv. Corp. v. Banister Elec., Inc.*, No. C 11-04126 LB, 2012 WL 3042696, at *1 (N.D. Cal. July 25, 2012).

12

*Inc.*, No. 1:10-cv-02138-AWI, 2011 WL 4908865, at *3 (E.D. Cal. Oct. 12, 2011) (quoting *Pueblo Trading Co. v. El Camino Irrigation Dist.,* 169 F.2d 312, 313 (9th Cir. 1948)). Courts considering motions for default judgment have therefore denied requests for injunctive relief outside the scope of a plaintiff's complaint. *E.g.*, *Ko Olina Intangibles, LLC v. Nimiety Grp. LLC*, Civ. No. 19-00441 JMS-RT, 2020 WL 5666703, at *6 (D. Haw. July 28, 2020), *recommendation adopted*, JMS-RT, 2020 WL 5665611 (D. Haw. Sept. 23, 2020).

It is not entirely clear whether Plaintiffs intended to request that the Court require Garrison to submit to an audit—at the hearing, Plaintiffs' counsel suggested that references to an audit might have been included in error—but if they did, they must address that request in their response to this Order, and explain how it is encompassed in the existing Complaint and prayer for relief.

Finally, Plaintiffs request that the Court "[r]etain[] jurisdiction of this matter to enforce the Order compelling payment of all amounts found to be due and owing." ECF No. 22 at 20. If Plaintiffs succeed in showing that an injunction to compel future payments is warranted, retaining jurisdiction to enforce the terms of that injunction would likely also be appropriate. Otherwise, it may still be appropriate for the Court to retain jurisdiction, but any further amounts that Plaintiffs wish to collect would likely require a motion to amend judgment. *See Operating Eng'rs Health & Welfare Tr. Fund for N. Cal. v. Lodi Sweeping Co., Inc.*, No. 20-cv-01500-JCS, 2021 WL 7448550, at *8 (N.D. Cal. Aug. 9, 2021) ("While courts may retain jurisdiction in ERISA cases to amend judgment to reflect damages in amounts uncertain at the initial entry of judgment, they generally do so by requiring a plaintiff to bring a motion for such amendment."), *recommendation adopted*, 2021 WL 7448554 (N.D. Cal. Oct. 1, 2021).

/ /
/ /
/ /
/ /
/ /
/ /

## V. CONCLUSION

For the reasons discussed above, Plaintiffs are ORDERED TO SHOW CAUSE why their Motion for Default Judgment should not be denied in part, specifically with respect to: (1) all unpaid contributions, liquidated damages, and interest; (2) a $1,279 portion of their request for attorneys' fees; and (3) their request for injunctive relief. Plaintiffs shall file a response no later than September 23, 2025.

**IT IS SO ORDERED.**

Dated: September 2, 2025

LISA J. CISNEROS
United States Magistrate Judge

14